Dear Honorable English,
The Attorney General has completed consideration of the request forreview made by the Department of Mines of the Coal Reclamation Act of1979 (herein, "CRA"), Laws 1979, c. 249, 45 O.S. 742, et seq., (1979),said review mandated by the federal regulations implementing the SurfaceMining Control and Reclamation Act of 1977 (herein, "SMCRA"), Pub.L.95-87.
30 CFR, 731.14, states in relevant part:
 "The program shall demonstrate that the State has the capability of carrying out the provisions of the Act and this Chapter and achieving their purposes by providing a complete description of the system for implementing, administering and enforcing a State program including, at a minimum —
 "(c) A legal opinion from the Attorney General of the State or the chief legal officer of the State regulatory authority stating that the State has the legal authority through enactment of new laws and regulations which are in the process of enactment to implement, administer and enforce the program and to regulate coal exploration and surface coal mining and reclamation operations in accordance with the Act and consistent with this Chapter. The opinion shall include a section-by-section comparison of the State's laws and regulations and amendments which are in the process of enactment with the Act and this Chapter, explaining any differences and their legal effect . . . ."
As noted in Opinion 79-213, 731.14(c) requires two things to be included in the legal opinion: (1) whether the state presently has the legal authority or will have the legal authority to implement, administer and enforce the program regulating coal exploration, surface coal mining and reclamation in a manner consistent with SMCRA and the relevant federal regulations, and (2) a section-by-section review of state law compared to SMCRA, identification of any differences in the state versus federal law and the legal effect caused by the differences.
30 CFR, 731.14, requires a format that is unusual to Oklahoma Attorney General opinions. We have again elected to set forth the "side-by-side" comparison in an "Annex" to this opinion. Annex "A" reaches identical conclusions to those set forth in the text of this Opinion and, therefore, will not be published pursuant to 74 O.S. 20 (1971).
30 CFR, 731.14(c), requires, in effect, an Opinion from this office whether the State "has the legal authority or will have the legal authority through enactment of new laws . . . which are in the proceeds of enactment to implement, administer and enforce the program and to regulate coal exploration and surface coal mining" consistent with SMCRA and federal regulations pertaining thereto. The scope of this Opinion embraces what was not addressed in 79-213, i.e., it comprises the comparison of state and federal regulations.
The following state regulations have been compared to their federal counterpart and found to be consistent thereto: 700.1, 700.2, 700.3, 700.4, 700.5, 700.11, 700.12, 700.13, 700.14, 700.15, 701.1, 701.2, 701.3, 701.4, 701.5, 701.11, 705.1, 705.2, 705.3, 705.4, 705.5, 705.6, 705.11, 705.13, 705.15, 705.17, 705.18, 705.19, 705.21, 707.1, 707.4, 707.5, 707.11, 707.12, 730.1, 730.2, 730.4, 730.5, 730.11, 730.12, 731.1, 731.11, 731.12, 731.13, 731.14, 732.1, 732.4, 732.11, 732.12, 732.13, 732.14, 732.15, 732.16, 732.17, 733.1, 733.4, 733.11, 733.12, 733.13, 735.1, 735.2, 735.3, 735.4, 735.5, 735.11, 735.12, 735.13, 735.14, 735.5, 735.16, 735.17, 735.18, 735.19, 735.20, 735.21, 735.22, 735.23, 735.24, 735.25, 735.26, 735.27, 735.28, 736.1, 736.2, 736.3, 736.4, 736.11, 736.12, 736.13, 736.14, 736.15, 736.16, 736.17, 736.21, 736.22, 736.23, 736.24, 745.1, 745.2, 745.4, 745.11, 745.12, 745.13, 745.14, 745.15, 745.16, 760.1, 760.2, 760.3, 760.4, 761.1, 761.2, 761.3, 761.4, 761.5, 761.11, 761.12, 762.1, 762.4, 762.5, 762.11, 762.12, 762.13, 762.14, 764.1, 764.2, 764.3, 764.11, 764.13, 764.15, 764.17, 764.19, 764.21, 764.23, 764.25, 770.1, 770.2, 770.4(b), 770.5, 770.6, 770.11, 770.12, 771.1, 771.2, 771.11, 771.13, 771.19, 771.21(a) and (b) (1), (2), (3), 771.23, 771.25, 771.27, 776.1, 776.2, 776.3, 776.11, 776.12, 776.13, 776.15, 776.17, 778.1, 778.2, 778.4, 778.11, 778.13, 778.14, 778.15, 778.16, 778.17, 778.18, 778.19, 778.20, 778.21, 779.1, 779.2, 779.4, 779.11, 779.12, 779.13, 779.14, 779.15, 779.16, 779.17, 779.18, 779.19, 779.20, 779.21, 779.22, 779.24, 779.25, 779.27, 780.1, 780.2, 780.4, 780.11, 780.12, 780.13, 780.14, 780.15, 780.16, 780.18, 780.21, 780.23, 780.25, 780.27, 780.29, 780.31, 780.33 780.35, 780.37, 782.1, 782.2, 782.4, 782.11, 782.13(a), (b), (c), (d), (e), (f), 782.14, 782.15, 782.16, 782.17, 782.18, 782.19, 782.20, 782.21, 783.1, 783.2, 783.4, 783.11, 783.12, 783.13, 783.14, 783.15, 783.16, 783.17, 783.18, 783.19, 783.20, 783.21, 783.22, 783.24, 783.25, 783.27, 784.1, 784.2, 784.4, 784.11, 784.12, 784.13, 784.14, 784.15, 784.16, 784.17, 784.18, 784.19, 784.20, 784.21, 784.22, 784.23, 784.24, 784.25, 784.26, 785.1, 785.2, 785.13, 785.15, 785.16, 785.17, 785.18, 785.20, 785.21, 785.22, 786.1, 786.2, 786.4, 786.5, 786.11, 786.12, 786.13, 786.14, 786.15, 786.17, 786.19, 786.21, 786.23, 786.25, 786.27, 786.29, 787.1, 787.2, 787.11, 781.12, 788.1, 788.2, 788.3, 788.11, 788.12, 788.13, 788.14, 788.15, 795.1, 795.2, 795.3, 795.4, 795.5, 795.11, 795.12, 795.13, 795.14, 795.15, 795.16, 795.17, 795.18, 795.19, 800.1, 800.2, 800.5, 800.11, 800.12, 800.13, 805.1, 805.11, 805.12, 805.13, 805.14, 806.1, 806.11, 806.12, 806.13, 806.14, 807.1, 807.11, 807.12, 808.1, 808.11, 808.12, 808.13, 808.14, 810.1, 810.2, 810.4, 810.11, 815.1, 815.2, 815.11, 815.13, 815.15, 815.17, 816.1, 816.2, 816.11, 816.13, 816.14, 816.15, 816.21, 816.22, 816.23, 816.24, 816.25, 816.41, 816.42, 816.43, 816.44, 816.45, 816.46, 816.47, 816.48, 816.49, 816.50, 816.51, 816.52, 816,53, 816.54, 816.55, 816.56, 816.57, 816.59, 816.61, 816.62, 816.64, 816.65, 816.67(b), (c), 816.68, 816.71, 816.72, 816.73, 816.74, 816.79, 816.81, 816.82, 816.83, 816.85, 816.86, 816.87, 816.88, 816.89, 816.91, 816.92, 816.93, 816.95, 816.97, 816.99, 816.100, 816.101, 816.102, 816.103, 816.104, 816.105, 816.106, 816.111, 816.112, 816.113, 816.114, 816.115, 816.116, 816.117, 816.131, 816.132, 816.133, 816.150, 816.151, 816.152, 816.153, 816.154, 816.155, 816.156, 816.160, 816.161, 816.162, 816.163, 816.164, 816.165, 816.166, 816.170, 816.171, 816.172, 816.173, 816.174, 816.175, 816,176, 816.180, 816.181, 817.1, 817.2, 817.11, 817.13, 817.14, 817.15, 817.21, 817.22, 817.23, 817.24, 817.25, 817.41, 817.42, 817.43, 817.44, 817.45, 817.46, 817.47, 817.48, 817.49, 817.50, 817.52, 817.53, 817.54, 817.55, 817.56, 817.57, 817.59, 817.61, 817.62, 817.65, 817.67, 817.68, 817.71, 817.72, 817.73, 817.74, 817.81, 817.82, 817.83, 817.85, 817.86, 817.87, 817.88, 817.89, 817.91, 817.92, 817.g3, 817.95, 817.97, 817.99, 817.100, 817.101, 817.102, 817.103, 817.106, 817.111, 817.112, 817.113, 817.114, 817.115, 817.116, 817.117, 817.121, 817.122, 817.124, 817.126, 817.131, 817.132, 817.133, 817.150, 817.151, 817.152, 817.153, 817.154, 817.155, 817,156, 817,160, 817.161, 817.162, 817.163, 817.164, 817.165, 817.166, 817.170, 817.171, 817.172, 817.173, 817.174, 817.175, 817.176, 817.180, 817.181, 818.1, 818.2, 818.4, 818.11, 818.13, 818.15, 819.1, 819.2, 819.11, 823.1, 823.2, 823.11, 823.12, 823.13, 823.14, 823.15 826.1, 826.2, 826.11, 826.12, 826.15, 826.16, 827.1, 827.11, 827.12, 828.1, 828.2, 828.11, 828.12, 840.1, 840.11, 840.12, 840.13, 840.14, 840.15, 842.1, 842.11, 842.12, 842.13, 842.14, 842.15, 842.16, 843.1, 843.11, 843.12, 843.13, 843.14, 843.15, 843.16, 843.17, 843.18, 843.19, 845.1, 845.2, 845.11, 845.12, 845.13, 845.14, 845.15, 845.16, 845.17, 845.18, 845.19 and 845.20.
These sections were compared to their federal counterpart found in Title 30, Code of Federal Regulations, and were found (except as otherwise noted below) to be either a verbatim adoption of the federal provision, or otherwise legally consistent in force and effect. For the purpose of this Opinion, a judgment of consistency means that the provision is either identical in force and effect or more stringent.
In reviewing the foregoing regulations found in Chapter VII, Title 30, Code of Federal Regulation, it was found that the following sections had no Oklahoma counterpart: Parts 706, 710, 715, 716, 717, 718, 720, 721, 722, 723, 725, 740, 741, 742, 743, 744, 765, 769, 809, 820, 822, 824, 825, 865, 870, 872, 877, 879, 882, 884, 886, 888, 890 and Sections 700.1(1), 700.3(a) and (b), 700.11(b) and (c), 731.14(h) (1) and (2) and (n), 735.16(a) (1) and (e) (1), 760.3(b), 760.4(a), 761.4(a), 761.11(b), 762.12(b), 764.3(a), 771.15, 771.17, 771.21(b) (4), 776.11, 776.14, 776.15(a), 778.17(b), 780.15(a), 785.11,785.12, 785.14, 785.19, 786.19(1), 787.11(c), 788.1(c), 788.2(b), 788.3(d), 788.5, 788.11(a) (2), 788.14(b) (3), 788.17, 788.18, 788.19, 807.11(h) (i), 807.12(e) (2) (v), 810.3, 816.42 (1) (7) (footnote 4), 817.42(1)(7) (footnote 4), 843.12(a) (2) and 843.15 (f) (3). None of said omitted provisions appears to be necessary for the development of this State's permanent regulatory program.
Oklahoma has adopted the following regulations not found in 30 CFR, Chapter VII: 771.23(e) (2) (iii), 776.17(b) (4), 776.17(c), 776.18, 780.15 (b) (3) and 815.18. None of the foregoing sections were found to be inconsistent with the federal regulations for the same subject matter.
The Department also added a new Section 733.11(b) which provides as follows:
 "(b) Substitution of Federal Enforcement for the State approved program or the withdrawal of approval for the State the program shall in no way relieve sic the Director of the Department of Mines from implementing, enforcing and maintaining the provisions of the State Act, these Regulations, and the State program as necessary to perform his or her duties.
Assuming for the purpose of this Opinion that SMCRA is a valid exercise of the legislative power granted to the federal government under the Constitution, the section may conflict with Section 504(g) of SMCRA,30 U.S.C.A. 1254(g), which states:
 "(g) Whenever a Federal program is promulgated for a State pursuant to this Act, any statutes or regulations of such State which are in effect to regulate surface mining and reclamation operations subject to this Act shall, insofar as they interfere with the achievement of the purposes and the requirements of this Act and the Federal program, be preempted and superseded by the Federal program. The Secretary shall set forth any State law or regulation which is preempted and superseded by the Federal program."
The regulations adopted by Oklahoma also reflect the substantive differences noted in the Opinion No. 79-213 comparison of state and federal law. Sections 771.21(b)(4), 788.1(c), 788.2(b), 788.3 (d), 788.5, 788.11(a) (2), 788.17, 788.18 and 788.19 reflect the fact that mining permits are not transferable under Oklahoma law. 45 O.S. 745.2 (1979). Sections 778.17(b) and 786.25(a) reflect the fact that permits in Oklahoma are limited to five year terms. Id.
As was noted in Opinion 79-213, there exists a difference in the scope of applicability of Oklahoma's Act to surface mining and reclamation activities. See Opinion 79-213, at pp. 6-7 comparing 4(A) and 4(B), CRA to 502 and 506, SMCRA. This difference is reflected in Oklahoma's regulations also. See 770.4 (a) and 816.67(a). The discussion contained in our prior Opinion is likewise applicable to consideration whether the noted regulations are considered consistent.
Appendix "B" to this Opinion is a list of differences between the federal and state regulations that appear to have been the result of inadvertence rather than a conscious decision to promulgate different regulatory provisions. The list includes omitted phrases and words, and errors in cross-referencing regulations. These errors should be corrected before the regulations are made effective to insure the apparent intended consistency between state and federal regulations. Inadvertence was probably the reason for Oklahoma 817.68(j) repeating the language found in 817.68(i) rather than adopting the substance of the federal counterpart to 817.68 (j) . Inadvertence also was the probable cause of the Oklahoma 817.68 (o) inconsistent language compared to the federal subsection.
The Oklahoma regulations, like the federal regulations, adopt by reference standards found in other federal regulations and in certain trade association standards. See e.g., Sections 700.5, 700.11(d) and (f), 701.5, 816.49, 816.65(e)(2), 816.85(c)(2), 816.86, 816.93 (a) (1), 816.97(c), 816.152(d) (6), 817.15, 817.46(q) (4), 817.46(t), 817.49(a) (5), 817.61(c), 817.65(e) (2), 817.85(a), 817.85(c) (2), 817.152(d)(6), 840.15 and 845.12(b).
Many of the cited regulations provide for the availability of copies of the referenced standards at certain locations, but do not state that two (2) copies shall be filed with the State Archivist and State Librarian. Oklahoma law permits regulatory standards to be effective when referenced but prescribes in 75 O.S. 251(b) (1971) a procedure for adoption of standards by reference.
 "(b) In order to avoid unnecessary expense, an agency may use the standards established by organizations and technical societies of recognized national standing by incorporating such standards in its rules by reference to the specific issue or issues of publications in which they are published, without reproduction of the standards in full, provided that such publications are readily available to the public for examination. If any such rule or regulation adopts by reference any standards which are published in any documents, pamphlets, publications, specifications, or other materials of any kind and which are not set forth fully in said rule or regulation, then two copies of such documents, pamphlets, publications, or other materials of any kind, certified by the adopting agency to be identical with that adopted in said rule or regulations, shall be filed with the State Librarian and Archivist and such adoption by reference shall not be valid until such copies are so filed; provided that nothing herein shall be construed to authorize any adoption by reference which could not have lawfully been adopted by reference prior to the effective date of this act." (Emphasis added)
Clear from a plain reading of the foregoing statute is the requirement that two copies of standards adopted by reference must be filed with the State Librarian and Archivist before the referenced standard is enforceable. Failure to comply with the provisions of Section 251 renders the regulation void. Adams v. Professional Practices Commission,524 P.2d 932 (Okla. 1974). Both Oklahoma Section 705.4(b)(3) and Oklahoma Section 705.19(b) purport to vary the action to be taken by the Director, Office of Surface Mining Reclamation and Enforcement in the event it becomes necessary to take action to remedy or eliminate a conflict of interest created by the ownership by a state employee of a "prohibited financial interest" as defined by Section 705.5. Ownership of such "prohibited financial interests" could subject the state employee to termination, 705.6, or criminal prosecution for a misdemeanor. Laws 1979, c. 249, 34, 45 O.S. 767 (1979). Section 736.12(a) requires the Director of OSM to publish certain notices in the Oklahoma Gazette.
It should be noted that the Department has no statutory authority to adopt either 705.4(b), 705.19(b), 736.12(a), or any of the other sections promulgated to enforce CRA that purport to define or govern the actions of federal officials in their enforcement of the comparable provisions of SMCRA. Nowhere in CRA did the Legislature purport to grant the Department this power. As the Court stated in Adams v. Professional Practices Commission, supra:
 "An administrative agency may not under the guise of its rule-making power exceed the scope of its authority and act contrary to the statute which is the source of its authority. Its authority to make rules for is various procedures does not include `authority to make rules which extend their powers beyond those granted by statutes Citations omitted . . . .' "
 524 P.2d at 934. Since regulations promulgated without statutory basis are void, it is unnecessary to determine herein whether the change reflected in the State provisions conflict with the federal provisions, or whether the legal reasons cited as explanation in support of the change, are correct. Such sections should be deleted.
Similarly Oklahoma Section 701.11 purports to make the mining regulations applicable to "persons" rather than "operators", ignoring the substantive difference between 4 CRA and Sections 502 and 506 SMCRA. For that reason said regulation cannot be effective because the Department exceeded the scope of authority granted to it by the Legislature in CRA. Adams v. Professional Practices Commission, supra.
Oklahoma Section 705.21 provides that employees of the Department of Mines have a right to appeal an order for remedial action under Section 705.19 and grants thirty days to exercise that right before disciplinary action is initiated. Subsection (b) of said section varies from the federal counterpart by adding language to the effect that the Chief Mine Inspector may file his appeal with the Governor who will refer it to the Attorney General, as well as filing an appeal with the Director of OSM for reference, to the Conflict of Interest Board within the Department of the Interior. Since the Chief Mine Inspector is a state official and not subject to removal by an edict from the federal government, See,42 Fed. Reg. 56060 (Oct. 20, 1977), it is assumed that the additional language is intended to show that a request will be made, through the Governor, for the Attorney General to represent the Chief Mine Inspector in such an appeal to the Department of the Interior pursuant to 74 O.S. 18(c) (1971), in order to avoid the applicable sanctions that can be applied by the Department of the Interior against the State's enforcement of the program; assuming said sanctions are constitutionally effective. The Chief Mine Inspector may be subject to removal under State law for violation of the provisions of 45 O.S. 767 (1979). Compare Art. VI, 1 and 25, as amended by referendum in 1975, to 74 O.S. 2 (1971), Hall v. Tire, 501 P.2d 496 (Okla. 1972) and 51 O.S. 91[51-91] et seq., (1971). Thus construed, the regulation is neither beyond the Department of Mine's power to adopt regulations, Adams v. Professional Practices Commission, supra, nor is it inconsistent with the federal provision.
Oklahoma's Section 787.11(b)(1) provides that in the event the Chief Mine Inspector presided over an informal conference held pursuant to 786.14, the Attorney General or his designate shall preside over the adjudicatory hearing held pursuant to 787.11. It is noted that CRA mandates that regulations for hearings and procedure be subject to the provisions of CRA and the Administrative Procedures Act, 75 O.S. 301[75-301] et seq. (1971), 75 O.S. 316 (1971) provides for the disqualification of hearing examiners, including agency heads. The statute states in relevant part:
 ". . . Upon the disqualification of a member of an agency, the Governor immediately shall appoint a member pro tem to sit in place of the disqualified member in the proceeding . . . ."
Under 45 O.S. 785 (1979) the Chief Mine Inspector must hold hearings and make findings of fact. If he is unable to do so for any reason, the provisions of 75 O.S. 316 would apply. Since the Department has no express authority under the law to assign responsibility to conduct hearings to the Attorney General, this provision must be modified to be effective. Adams v. Professional Practices Commission, supra.
Oklahoma Sections 778.13 (g) and 782.13 (g) both prescribe information required to be included in an application for surface or underground mining activities permit. The language of each provision is identical and states as follows:
 (g) Each application shall contain a statement of all lands, interests in lands, options, or pending bids on interests held or made by the applicant for lands which are contiguous to the area to be covered by the permit if application is anticipated on such lands within one year. Emphasis Added
These Oklahoma sections are also identical to their federal counterpart except for the clause underlined in the quote above. The Department explained these changes by noting that they were intended to "protect landowners should adjacent land not yet be obligated. The added language, however, does not have that effect, but instead limits the scope of the information required in the application concerning contiguous lands to the situation where "application is anticipated on such lands within one year." The federal provision requires the contiguous land information whether or not the applicant anticipates filing a permit application on the lands within one year. As presently drafted, Sections 778.13(g) and 782.13(g) are inconsistent in scope.
Oklahoma Section 785.13 sets forth proposed regulations intended to provide discretion in the regulations for approval of experimental practices in regard to the environmental performance standards set forth in other regulations. Oklahoma's Section 785.13 is generally consistent with the federal counterpart, but is still fatally defective. As was noted at page 3 of Opinion 79-213, Oklahoma did not adopt a statute comparable to Section 711 SMCRA, 30 U.S.C. § 1301. Section 711 SMCRA expressly authorizes "departures in individual cases on an experimental basis from the environmental protection performance standards promulgated under sections 515 and 516" of SMCRA. The Oklahoma statutes that are comparable to Sections 515 and 516 SMCRA (See Opinion 79-213, Appendix at 6-7) set forth inter alia, performance standards that are mandatory in force and effect. Without an exception in Oklahoma's law comparable to Section 711 SMCRA, the Department has no statutory authority to approve such experimental practices. Accordingly, Oklahoma Section 785.13 cannot validly be placed into effect. Adams v. Professional Practices Commission, supra.
Oklahoma regulation 800.5 adopts special definitions for the terms "common size comparative balance sheets" and "common size comparative income statement." The definitions adopted do not track the federal section's definition of the same terms, nor are the definitions legally equivalent in effect.
Section 19 of CRA, Laws 1979, c. 249, 19, 45 O.S. 745.16 (1979) states:
 "If the Department finds that the probable total annual production at all locations of any coal surface mining operator will not exceed one hundred thousand (100,000) tons, the determination of probable hydrologic consequences required by law and the statement of the result of test borings or core samplings required by law shall, upon the written request of the operator, be performed by a qualified public or private laboratory designated by the Department and the cost of tile preparation of such determination and statement shall be assumed by the Department." Emphasis Added
Oklahoma regulation Section 795.1(b) adds to the language otherwise consistent to the comparable federal regulation, the following provision:
 ". . . Additional assistance for all operators shall be provided under the State Mining Operators Assistance Program from State funds, HB 1471, including training, research and laboratory assistance."
House Bill 1471 of the 37th Oklahoma Legislature, Laws 1979, c. 74, 45
O.S. 931[45-931] et seq. (1979), established, inter alia, a "fee" of five cents per ton of coal produced in Oklahoma, established a certain revolving fund and provided that monies collected from said "fee" should be deposited in said revolving fund to the credit of the Department of Mines. No provision in HB 1471 authorized or required the monies deposited in the revolving fund to be spent for a particular purpose, but 45 O.S. 938 (1979) states in relevant part:
 ". . . Expenditures from the fund shall be made for any lawful purpose of the Department of Mines . . . ."
Article X, Section 15, Oklahoma Constitution, states that:
 "The credit of the State shall not be given, pledged, or loaned to any individual company, corporation or association, municipality or political subdivision of the State; nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax or otherwise, to any company, association or corporation."
It is the opinion of the Attorney General that payment of State tax dollars to mining operators pursuant to 45 O.S. 745.16 (1979) or pursuant to Department proposed regulation 795.1(b) would violate the provisions of Article X, Section 15, Oklahoma Constitution. For this reason said expenditures would not be a lawful purpose" under 45 O.S. 938 (1979) and may not be paid from the fund created thereby.
As Oklahoma regulation Section 795.1 makes clear, Part 795 is intended to govern the procedures for providing assistance to qualified small mine operators requesting such assistance under Section 19 CRA. Since that provision unconstitutionally authorizes expenditures of state money, it provides no basis for regulations. The regulations comprising Part 795 being without valid statutory basis, they cannot be enforced. Cf. Adams v. Professional Practices Commission, supra.
It is, therefore, the opinion of the Attorney General that, except tothe extent outlined above, when CRA becomes effective according toSection 62 thereof, the Department has authority under effectiveregulations to implement, administer and enforce the State's proposedprogram regulating coal exploration, surface coal mining and reclamationin a manner consistent with SMCRA and the relevant federal regulations.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
CHARLES S. ROGERS, ASSISTANT ATTORNEY GENERAL